IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KLINTON MICHAEL KING, | No. C-12-5140 TEH (PR) |
| Petitioner, | ORDER OF DISMISSAL |
| v. | |
| L.S. McEWEN, Warden, | |
| Respondent. | |

Klinton Michael King, a state prisoner incarcerated at California State Prison - Lancaster, has filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. The matter is now before the Court for consideration of the merits of the habeas petition. For the reasons discussed below, the petition is DENIED.

I

On April 2, 2010, in Lake County Superior Court, Petitioner pled guilty to two counts of committing lewd acts on a child under 14. Docket No. 18, Exh. 1 ("RT") at 14-15 and Cal. Penal Code § 288(a). Petitioner was sentenced to ten years in state prison. Docket No. 18, Exh. 2 ("CT") at 146, 175.

Petitioner appealed his conviction in the California Court

of Appeal. Docket No. 18, Exh. 3. On August 23, 2011, the California Court of Appeal filed an unpublished opinion affirming the judgment. <u>People v. King</u>, No. A129911, 2011 WL 3686461 (Cal. Ct. App. August 23, 2011). On November 2, 2011, the California Supreme Court denied Petitioner's petition for review. Docket No. 1 at 37.

On October 3, 2012, Petitioner filed the instant federal petition. On July 18, 2013, this Court granted Respondent's motion to dismiss the unexhausted claims and ordered Respondent to show cause as to why the petition should not be granted on the one remaining claim. Respondent filed an answer; Petitioner has not filed a traverse.

II

The following factual background is taken from the order of the California Court of Appeal.

> A.H. was born in December 1991. When she was 4 years old, it appears that her mother and appellant Klinton Michael King began living together, and he stepped into the role of step-father to the girl. A.H.'s mother was an alcoholic and the relationship between the two adults was stressful. In December 2009, A.H. turned 18 years old.
>
> In January 2010, the Lake County Sheriff's Office received a report that King may have molested A.H.[2] When A.H. was interviewed, she confirmed that she had been molested over a two-year period beginning when she was 12 years old. The molestation included genital touching, oral copulation, and both attempted and completed vaginal intercourse. The most serious incidents occurred when A.H.'s mother was incarcerated.
>
> > Fn 2: As there was no preliminary hearing or trial in this matter, we rely on the probation report's summary of the underlying offenses.
>
> On February 2, 2010, a complaint was filed alleging that King had committed seven sexual offenses involving a single child under age 14. The complaint alleged that in

2

October 2004, he committed three lewd and lascivious acts on a child under age 14. (Former § 288, subd. (a).) It also alleged that King committed a fourth lewd act, rape, oral copulation and sodomy against that child during the following year. (See §§ 261, subd. (a)(2), (6), 286, subd. (c)(1), 288, subd. (a), 288a, subd. (c)(1).) The following day, the trial court issued a criminal protective order, barring King from having any contact with A.H. (§ 136.2.)

Initially, King pled not guilty to all counts. In April 2010, he pled guilty to two counts of lewd and lascivious acts on a child alleged to have been committed in October 2004. (Former § 288, subd.(a).) In a written plea form, King pled guilty to these two charges. He acknowledged that he was subject to a maximum term of 10 years in state prison for them, that both were serious felonies, and that he would be required to register as a sex offender. He waived his right to a preliminary hearing. Citing sections 288.1 and 1203.067,[3] he also stated his understanding that he would not be granted probation unless the court found at the time of sentencing that his was an unusual case in which the interests of justice would be best served by a grant of probation. On the People's motion, the remaining charges were dismissed.

> Fn 3: These provisions require the trial court to obtain a psychiatric report and a diagnostic report from the Department of Corrections before granting probation to a person convicted of lewd conduct with a child under age 14. (§§ 288.1, 1203.067, subd. (a).)

King was referred for a diagnostic evaluation at the Department of Corrections. (§ 1203.03.) He was also evaluated by a court-appointed psychiatrist. (§ 288.1.) The trial court advised King that he would not be granted probation unless both of these reports were favorable. In his interviews with these evaluators, King denied committing the acts to which he pled guilty. During his evaluation by the Department of Corrections, King was found with several photographs of the victim and several letters from her, as well as a photograph of himself with a small girl lying on a couch together.

The Department of Corrections reporters characterized King as a risk to society and a poor candidate for probation. The evaluators recommended that King be sentenced to prison. A Ukiah psychiatrist concluded that because King failed to accept responsibility for the offenses he had admitted in his guilty plea, he remained at risk to reoffend and would not be amenable to treatment. The substantial nature of the sexual conduct and King's denial

3

> of his part in it prompted the psychiatrist to recommend against a grant of probation.
>
> The probation report indicated that King was eligible for probation, but recommended that he be sentenced to state prison for eight years. The report proposed the imposition of various restitution, fees and fines, including a $300 sex offender fine. (§ 290.3.) A ban on contact with the victim was also recommended.
>
> A.H.'s mother died in July 2010. At the August 2010 sentencing, King's counsel acknowledged that the Department of Corrections diagnostic evaluation was "very unfavorable." Still, King sought a grant of probation with A.H.'s support. The trial court agreed with the Department of Corrections, the psychiatrist, and the probation department that to grant King probation would be inappropriate. It cited numerous reasons for denying probation – the nature, seriousness and circumstances of the crime were more serious than other instances of the same offenses; the young age of the victim when the molestation began; the infliction of physical and emotional injury on the victim; King's active participation in the crimes; the taking advantage of a position of trust to commit the offenses; the taking advantage of the mother's absence to commit these crimes; and a poor ability to comply with reasonable terms of probation. The trial court also gauged the likely effect of imprisonment as moderate and found that King posed a substantial danger to others if not imprisoned.
>
> King was sentenced to a total term of 10 years in state prison – an upper term of 8 years for one lewd act and a consecutive one-third upper term of 2 years for the second one. He was also ordered to pay a $300 fine as a sex offender. (§ 290.3.) The trial court prohibited any visitation between King and A.H. (§ 1202.05.) King sought a certificate of probable cause to enable him to challenge the underlying plea on appeal, but the trial court denied the request.

**People v. King**, 2011 WL 3686461, at *1 - *3.

### III

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28

4

U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the

5

"unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. Moreover, in conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" Felkner v. Jackson, 131 S. Ct. 1305, 1307 (2011).

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003).

When applying these standards, the federal court should review the "last reasoned decision" by the state courts. Avila v. Galaza, 297 F.3d 911, 918 n.6 (9th Cir. 2002). In this case, the last reasoned decision is the California Court of Appeal's August 23, 2011, written opinion on direct appeal affirming the trial court judgment.

With these principles in mind regarding the standard and

6

scope of review on federal habeas, the Court addresses Petitioner's claim.

**IV**

Petitioner claims that the trial court applied the probation eligibility law in effect at the time of Petitioner's 2010 sentencing rather than the law that was in effect in 2004 when Petitioner's offenses occurred, in violation of the Ex Post Facto Clause.

The United States Constitution prohibits the federal government and the states from passing any "ex post facto Law." U.S. Const. art. I, § 9, cl. 3 (federal government); art. I, § 10, cl. 1 (states). These clauses prohibit the government from enacting laws with certain retroactive effects: any law that (1) makes an act criminal when the act was done before the passing of the law; (2) aggravates a crime or makes it greater than it was when it was committed; (3) changes the punishment and inflicts a greater punishment for the crime than the punishment authorized by law when the crime was committed; or (4) alters the legal rules of evidence and requires less or different testimony to convict the defendant than was required at the time the crime was committed. See Stogner v. California, 539 U.S. 607, 611-12 (2003) (citing Calder v. Bull, 3 U.S. 386 (1798)). An ex post facto violation occurs only if there is a retroactive application of law that works to the defendant's detriment. Lynce v. Mathis, 519 U.S. 433, 441 (1997). "A law is retrospective if it 'changes the legal consequences of acts completed before its effective date.'" Miller v. Florida, 482 U.S. 423, 430 (1987), overruled in part on other grounds by California

Dept. of Corr. v. Morales, 514 U.S. 499, 506, n. 3 (1995), (quoting Weaver v. Graham, 450 U.S. 24, 31 (1981)).

The state court denied Petitioner's claim, finding that there was no evidence that the trial court applied the 2010 version of the sentencing law rather than the 2004 version:

> Finally, King seeks resentencing on two grounds. He first reasons that the trial court applied a statutory limitation on probation that had not been enacted at the time that he committed the charged offenses. He argues that this misapplication of statute violated the ban on ex post facto laws and requires a remand for reconsideration of his application for a grant of probation. At the time of sentencing, then-current statutory law banned a trial court from granting probation to those convicted of lewd conduct with a child if specified circumstances were pled, admitted or found true. (Former § 1203.066, subd. (a), (c)(1) [Stats.2006, ch. 538, § 506].) The specified circumstances were not alleged in the King complaint, were not admitted in his guilty plea and were not the subject of trial court findings. Under the 2010 statute, if these specified circumstances were not pled or proven, one convicted of lewd conduct with a child could be granted probation only if certain conditions were shown — conditions that do not appear to apply in King's case. (Former § 1203.066, subd. (a), (c)(1), (d)(1) [Stats.2006, ch. 538, § 506].) In 2004 when the lewd conduct occurred, the law contained a similar ban on probation under specified circumstances, but also contained specified limitations on probation if those circumstances were not pled, admitted or found true. (See former § 1203.066, subd. (a), (d) [Stats.1997, ch. 817, § 13, pp. 5584-5587].)
>
> On appeal, King reasons that the trial court applied the 2010 version of this law, which contained greater limits on its discretion than the law that was in effect at the time that he committed the lewd conduct in 2004. This application of law violates the ban on ex post facto laws, he contends. In order for him to prevail on this claim of error, he must establish that the trial court applied the 2010 version of this statute, rather than the 2004 version of it. On appeal, we must presume that the trial court applied the correct law. King must affirmatively demonstrate the error that he claims. (In re Julian R. (2009) 47 Cal.4th 487, 498-499; see Evid. Code, § 644.) He has not done so.
>
> King notes that the psychiatrist referred to this

8

> provision in his report and that his counsel spoke of limitations to the possibility of probation at sentencing, rather than an outright ban on probation. He reasons that these comments both refer to the 2010 law rather than the 2004 version of section 1203.066, but it is significant that the trial court did not refer to either of them.
>
> Instead, the record supports our assumption that the trial court applied the correct version of the law. The probation report stated that the offenses were committed in 2004. That report twice stated expressly to the trial court that King was statutorily eligible for probation. It recommended that King be sentenced to prison, rather than granted probation, for a long list of reasons related to his conduct, not any statutory limitation on the trial court's discretion. When the court cited its many reasons why probation was to be denied, it did so because it found a grant of probation to be inappropriate. In listing the factors that entered into its decision, it made no reference to section 1203.066 or any limitation of its discretion to grant probation. None of these circumstances suggest that the trial court applied the then-current version of section 1203.066. As King has not proven the factual predicate that the trial court applied the 2010 version of section 1203.066 rather than the 2004 version, his ex post facto claim necessarily fails.

People v. King, 2011 WL 3686461, at *3-*4.

The Court presumes correct the state court's determination of the factual issue of whether the state court applied the correct version of the sentencing law. 28 U.S.C. § 2254(e)(1) and Bragg v. Galaza, 242 F.3d 1082, 1087 (9th Cir.), amended, 253 F.3d 1150 (9th Cir. 2001) (citing Sumner v. Mata, 449 U.S. 539, 546-47 (1981)) (presumption of correctness applies to findings made by both state trial courts and appeal courts). Petitioner has not presented any evidence rebutting this presumption, much less the clear and convincing evidence required by § 2254(e)(1). 28 U.S.C. § 2254(e)(1) (requiring clear and convincing evidence to rebut the presumption of correctness).

9

Moreover, the appellate court's determination that the trial court had applied the 2004 parole eligibility law is supported by substantial evidence in the state court record. In denying parole, the trial court did not mention the 2010 parole eligibility law. Nor does the trial court indicate in any way that it believed that its discretion was limited. The denial of parole was based on other reasons, including the victim's youth at the time of the crime; Petitioner's active participation in the crime; Petitioner's abuse of his position of trust; the physical and emotional injury to the victim; Petitioner's likely inability to comply with the terms of probation; Petitioner's refusal to accept responsibility for his crime; and the moderate impact of incarceration on Petitioner. CT at 169-70.

Since Petitioner has failed to show that the state court retroactively applied a law, there is no ex post facto violation. Weaver, 450 U.S. at 29 ("two critical elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.") (footnotes omitted); Lynce, 519 U.S. at 441. The state court denial of Petitioner's claim was a reasonable application of federal law to the facts of Petitioner's case. Habeas relief is denied on this claim.

V

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

Further, a Certificate of Appealability is DENIED. See

10

Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. <u>See</u> Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk is directed to enter Judgment in favor of Respondent and against Petitioner, terminate any pending motions as moot and close the file.

IT IS SO ORDERED.

DATED  *02/17/2015*

THELTON E. HENDERSON
United States District Judge

G:\PRO-SE\TEH\HC.12\King 12-5140 Deny.wpd

11